UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDOLF SANCHEZ; SYLVIA SANCHEZ,<br><br>Plaintiffs,<br><br>v.<br><br>SERVIS ONE, et al.,<br><br>Defendants. | Case No.: 18cv586 JM(JMA)<br><br>**ORDER ON DEFENDANT RESIDENTIAL CREDIT SOLUTION INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

Presently before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) filed by Defendant Residential Credit Solution, Inc. and directed to the Second Amended Complaint ("SAC"). (Doc. No. 62). The motion has been fully briefed and the court finds it suitable for submission on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, the motion is denied in part and granted in part.

**I.  Background**

On July 16, 2018, Plaintiffs filed a First Amended Complaint ("FAC") for violations of the Fair Credit Reporting Act (FCRA), California Consumer Credit Reporting Agencies Act ("CCRAA") and the bankruptcy automatic stay provisions. (Doc. No. 41.) The court dismissed the FAC under Federal Rule of Civil Procedure 8(a) for its failure to provide "a

short and plain statement of the claim showing that the pleader is entitled to relief." (Doc. No. 54 at 4-5[1].)

On November 7, 2018, Plaintiffs filed their SAC against the only two remaining Defendants, Servis One, Inc. dba BSI Financial Services ("BSI") and Residential Credit Solutions, Inc. ("RCS"). (Doc. No. 55.) The SAC alleges Defendants reported inaccurate, negative and derogatory information on Plaintiffs' credit reports. (Doc. No. 55 ("SAC") at ¶ 1).

Plaintiffs filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy") on August 28, 2012. (SAC ¶ 25.) Plaintiffs filed a proposed Chapter 13 Plan (the "Plan") with the Bankruptcy Court on September 11, 2012. (*Id.* at ¶ 25.) The Bankruptcy Court confirmed the Plan on March 13, 2013. (*Id.*) Pursuant to the terms of the Plan, Plaintiffs made monthly payments of $150.00 for 60 months to the Bankruptcy Trustee until the Bankruptcy was discharged on October 12, 2017 (*Id.* at ¶¶ 30, 37, 41.)

The SAC alleges RCS was listed in Plaintiffs' Bankruptcy and received notice of the bankruptcy filing and subsequent automatic stay yet violated its obligation to refrain from all collection activity by selling, assigning, or transferring to BSI its claim for the purpose of collection. (*Id.* at ¶¶ 2, 25, 27). It is also alleged that transferring the claim violated the bankruptcy automatic stay provision 11 U.S.C. § 362(a), making Defendants liable for damages under 11 U.S.C. § 362 (k). (*Id.* at ¶ 3.)

Plaintiffs allege the lien held by RCS was incorporated in the bankruptcy proceedings via the Motion to Value Real Property that Plaintiffs filed on December 17, 2012. (*Id.* at ¶ 40.) On December 17, 2012, a notice of the motion was sent to RCS. (*Id.*) On March 8, 2013, the Bankruptcy Court granted the unopposed motion, ordering RCS's claim be treated and paid as an unsecured claim. (*Id.* at 39.) Upon plan completion and

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

discharge, the lien would be deemed satisfied, the lien to be reconveyed and released; should the case be dismissed RCS would retain the lien. (*Id.*) RCS did not file a Proof of Claim with the Bankruptcy Court. (*Id.* ¶ 47.) Further, Plaintiffs allege that sometime between August 21, 2013 and December 12, 2013, someone at RCS sold, assigned or transferred the claim to BSI in order to get value from a now valueless claim. (*Id.* at ¶ 133-34.) After acquiring the claim, BSI did not file a Proof of Claim in Plaintiffs' Bankruptcy. (*Id.* at ¶ 73.)

The Bankruptcy Trustee's Final Report and Account deemed RCS's and BSI's debt "unsecured," meaning Plaintiffs paid nothing to either Defendant and the remaining balance was to be discharged. (SAC at ¶ 48, 74.) Plaintiffs' discharge was entered on October 12, 2017, and RCS received notice of the discharge on or about the same day. (*Id.* at ¶ 40). Plaintiffs allege RCS informed BSI the prepetition claim was subject to Bankruptcy Orders and "BSI forwarded all aforementioned notices received from the bankruptcy court to RCS, including the Bankruptcy Orders. Plaintiffs allege BSI, upon the claim being sold, assigned or transferred, as well as on June 9, 2016, pulled the credit report of Plaintiffs and at time had additional notice the prepetition claim was subject to the Bankruptcy." (*Id.* at ¶ 75.)

Plaintiffs allege that following the bankruptcy discharge, in four reports issued by Credit Reporting Agencies ("CRA's") TransUnion and Equifax dated October 19, 2017, October 27, 2017, and November 21, 2017, RCS inaccurately, misleadingly and derogatorily reported information regarding account number 200015…\*. (*Id.* at ¶¶ 42-45, 50-51.) For example, Plaintiffs allege a TransUnion Credit Report dated November 21, 2017, contains an entry from RCS reporting the account:

> as of September 20, 2013: Pay Status: Account 120 Days Past Due; Maximum Delinquency of 120 days in 11/2010 for $2,890 and in 09/2013; 120 Days past Due notations from 11/2012 until 08/2013.

(*Id.* ¶ 42.) Plaintiffs allege these reports do not accurately reflect that while the Bankruptcy Plan was in effect, Plaintiffs were following the prescribed payment plan authorized by the

Bankruptcy Trustee, and as such, were not delinquent on payments during this period. (*Id.* at ¶¶ 54, 55, 56, 57, 59.) Further, the reports RCS furnished did not accurately reflect that the RCS debt was discharged in the bankruptcy. (*Id.* at ¶¶ 46, 58.)

Substantially similar allegations are made regarding BSI's inaccurate reporting of BSI account number 403…* to TransUnion, Equifax and Experian. (*Id.* at ¶¶ 66-106.) Specifically, on a TransUnion Credit Report dated November 21, 2017, BSI reported the account as:

> Pay status: Account 120 Days Past Due; Maximum Delinquency of 120 days in 10/2017 for $44,814; Balloon payment of $59,001 due on 05/01/2022; 120 Days Past Due notations from 01/2014 until 10/2017.

(*Id.* at ¶ 66.) Plaintiffs sent dispute letters to the Credit Bureaus requesting BSI remove the incorrect information from their credit reports. (*Id.* at ¶¶ 92-95.) BSI allegedly failed to remove the derogatory information regarding the $59,001 balloon payment due on 05/01/2022, nor perform the necessary investigation. (*Id.* at ¶¶ 96-104.)

Plaintiffs also allege that once the automatic stay went into effect, Defendant RCS willfully and intentionally sent multiple communications to Plaintiffs regarding payment of the debt in violation of the stay. (*Id.* at ¶¶ 117-134.) After RCS transferred, sold or assigned its claim to BSI, BSI allegedly willfully violated the automatic bankruptcy stay by sending multiple collection notices to Plaintiffs. (*Id.* at ¶¶ 134-139.)

Plaintiffs bring the FCRA claim against BSI (SAC at 17), while the claims for violation of CCRAA, California Civil Code section 1785.1 *et seq*. and violation of the bankruptcy automatic stay provision 11 U.S.C. § 362(a) are brought against both defendants. (*Id.* at 17-20). The prayer for relief requests actual, statutory and punitive damages under each of the acts' respective provisions, along with attorney's fees and costs. (*Id.* at 20-21.)

RCS moves to dismiss Plaintiffs' CCRAA claim under Federal Rules of Civil Procedure 12(b)(6) and Plaintiffs' claim for violation of the bankruptcy automatic stay under Rules 12(b)(6) and 12(b)(1). (Doc. No. 62.) BSI joined RCS's motion by filing a

Notice of Joinder.[2] (Doc. No. 63.) Plaintiffs filed a response in opposition (Doc. No. 66), and Defendant RCS filed a reply (Doc. No. 67). In its reply, RCS withdrew its Rule 12(b)(1) argument pertaining to Plaintiffs' automatic stay claim. (*Id.* at 6.) BSI filed a Notice of Joinder to the Reply in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint. (Doc. No. 68.)

After the court took the matter under submission, Plaintiffs filed a Notice of Supplemental Authority in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. (Doc. No. 71.)

## II. Judicial Notice

As a preliminary matter, the court notes that in a footnote on page 30 of their opposition, Plaintiffs ask the court to take "judicial notice of the Bankruptcy Case Docket and Filings, case no. 12-1821-CL13 in the Bankruptcy Court for the Southern District of California pursuant to Federal Rules of Evidence 201(b)(1) & (b)(2) as the matter is generally known within this trial court's jurisdiction and can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." (Doc No. 66 at 30 n. 9.) Defendant, again in a footnote, states it "does not object to this request. RCS requests the court take judicial notice of Docket No. 49 of Plaintiffs' Chapter 13 Bankruptcy that shows the Order of Discharge was served by first-class mail on October 14, 2017." (Doc. No. 67 at 8 n. 2.)

"Judicial notice under Rule 201 permits a court to take notice of an adjudicative fact, if it is "not subject to reasonable dispute." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), *petition for cert filed, Joseph P. Hagan, et. al v. Karim Khoja,* (U.S. Jan. 31, 2019) (No. 18-1010). Here, neither party has attached a single exhibit nor cited to any legal authority in support of their requests. Rather, it appears the parties are asking the court to take judicial notice of the entire docket and every filing in the

---

[2] Defendant BSI has not moved for dismissal of the FCRA claim against it.

5

bankruptcy case. The court is hard pressed to imagine that the current motion warrants judicial notice of every adjudicated fact not subject to reasonable dispute in the entire bankruptcy record. *See* Fed. R. Evid. 201(b), *Lee v. City of L.A.,* 250 F.3d 668, 689-690 (9th Cir. 2001) (taking judicial notice of exhibits attached to the motion to dismiss that were undisputed matters of public record). By making such a blanket request, the parties have not allowed the court to "identify which fact or facts it is noticing…. Just because the documents [are] susceptible to judicial notice does not mean that every assertion of fact within [those] documents is judicially noticeable for its truth." *Khoja,* 899 F.3d at 999. Finding both requests inadequate, the court declines to take judicial notice of the entire bankruptcy case docket and filings, and declines to independently mine the bankruptcy record to determine which records are to be noticed.

### III. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). But, even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## IV. Discussion

Defendants move to dismiss the CCRAA claim under Rule 12(b)(6), asserting the claims have not been pled with the requisite specificity. As to the bankruptcy stay claim, Defendants contend that RCS's transfer of interest in the loan did not violate the automatic stay. (Doc. No. 62-1 at 14-17.)

### A. CCRAA Claim

Defendants make four arguments in favor of dismissal of the the CCRAA claim. Defendants' primary argument surrounds whether Plaintiffs have adequately identified when RCS and BSI knew of the inaccurate information or when Defendants furnished the inaccurate and misleading information to TransUnion, Equifax and Experian. (Doc. No. 62-1 at 6-9.) Second, Defendants assert the filing of the Bankruptcy does not bar them from reporting Plaintiffs' pre-bankruptcy obligations after they filed for bankruptcy. (*Id.* at 9-11.) Third, Defendants argue that a purported violation of an industry standard does not state a claim under the CCRAA. (*Id.* at 11). Finally, Defendants posit that Plaintiffs have failed to plead damages. (*Id.* at 11-12).

Plaintiffs' main argument in opposition is that Defendants failure to update the status of the accounts as "discharged/included in bankruptcy" with a $0 balance inaccurately and misleadingly suggested that Plaintiffs still owed these debts. (Doc. No. 66 at 17-23.) As to the pre-discharge reporting, Plaintiffs counter that Defendants failure to report the Chapter 13 Plan violated industry standards and gave an incorrect, incomplete and misleading impression to potential creditors. (*Id.* at 20-23.) Pointing to specific paragraphs within the SAC, Plaintiffs also contend they have adequately pled damages, arguing that Defendants' positions are premature and baseless. (*Id.* at 11-14).

California's CCRAA prohibits the furnishing of incomplete or inaccurate information to CRAs stating "a person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." CAL. CIV. CODE § 1785.25(a). While the CCRAA does not define what constitutes "incomplete or inaccurate," the Ninth

Circuit has held that the provision requires furnishers of credit information "not only refrain from making any reports that are obviously wrong or missing crucial data, but also that the reports not contain information that is materially misleading." *Kuns v. Ocwen Loan Servicing, LLC*, 611 Fed. Appx. 398, 400 (9th Cir. 2015); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890-91 (9th Cir. 2010) *(*interpreting the CCRAA in a manner consistent with the FCRA and finding the phrase "incomplete or inaccurate" to mean "patently incorrect or misleading.").

A section 1785.25(a) claim is sufficiently pled when a complaint plausibly alleges (1) that a furnisher failed to report a debt as discharged or (2) where a furnisher reported inconsistent information, some of which was negative to the debtor. *Huizar v. Wells Fargo Bank, N.A.*, 257 F. Supp. 3d 1103, 1108 (E.D. Cal. 2017); *Venugopal v. Dig. Fed. Credit Union,* No. 5:12-CV-06067 EJD, 2013 WL 1283436, at 3 (N.D. Cal., Jan 24, 2017); *Grantham v. Bank of Am., N.A¸* No. CV12-1960 MEJ, 2012 WL 5904729, at *4 (N.D. Cal. Nov. 26, 2012).

### 1. *Allegedly Inaccurate Information Following Discharge*

Here, the SAC sufficiently identifies the transactions at issue – the over 120 day past due/delinquency tradelines related to the RCS account number 200015…* as of September 2013, and the over 120/180 day past due/delinquency status related to the BSI account number 403…* for the time period between 01/2014 until 08/2017, along with the accompanying balloon payment entries. (SAC at ¶¶ 42-45, 66-71.) Plaintiffs allege it was inaccurate and misleading for Defendants to report the "delinquencies related to Plaintiffs' pre-Bankruptcy obligations after August 12, 2012 because Plaintiff filed for Bankruptcy on August 12, 2012, at which point the automatic stay went into effect and severed [Defendant]'s ability to enforce Plaintiffs' purported pre-Bankruptcy obligations. (*Id.* at ¶ 50, 76).

While Plaintiffs have failed to allege the exact date RCS or BSI had actual knowledge of the Bankruptcy discharge, the court is not convinced the lack of specificity as to dates is fatal to Plaintiffs' claim. The SAC alleges that the "Furnisher-Defendants

received notice of [Plaintiffs' bankruptcy discharge] on or about October 12, 2017," (*see* SAC at ¶ 41), and that "RCS received notice of the successful discharge from the BNC on October 12, 2017 by first class mail." (*Id.* at ¶ 61.) It also alleges that RCS "forwarded all aforementioned notices received from the bankruptcy court to RCS [sic], including the Bankruptcy Orders." (*Id.* at ¶ 75.) Even if the court were to disregard the October 19, 2017 reports, by the time the October 27, 2017 reports were issued, RCS and BSI should have been aware that the debts owed to it were discharged by the Bankruptcy Court.

The court is not persuaded by Defendants' arguments that Plaintiffs failed to identify the inaccurate information contained in the reports, nor their assertion that the filing of the bankruptcy did not bar them from reporting Plaintiffs' pre-bankruptcy obligation. The bankruptcy discharge made Defendants' reporting of the debt owed, without a tradeline indicating the subsequent event, an inaccurate and incomplete furnishing, a situation the CCRAA was designed to prevent. *See, e.g., Nissou-Rabban v. Capital One Bank (USA), N.A.*, 285 F. Supp. 3d 1136, 1150 (S.D. Cal. Jan 23, 2018) ("[H]istorically accurate information should not be deemed inaccurate for purposes of the FRCA when the debt is subsequently discharged through bankruptcy, so long as it provides the complete picture, so as not to affect future credit decisions."); *Montgomery v. Wells Fargo Bank,* No. C12-3895 TEH, 2012 WL 5497950, at *5 (N.D. Cal. Nov. 12, 2012) (holding that although furnisher defendant's reporting of account as "charged off" was technically accurate, the furnisher's information was incomplete because it failed to report that plaintiff's debt had been discharged in bankruptcy.) It is the incompleteness of the reporting which could make the reports misleading and thus forms the basis of the CCRAA claim, and Plaintiffs have alleged that none of the reports in question clearly indicate that the debts to RCS and BSI were subsequently discharged in bankruptcy. (SAC at ¶¶ 46, 59, 72.)

Accepting these factual allegations as true and construing them in the light most favorable to Plaintiffs, the court finds that, to the extent Plaintiffs' claims are premised on the theory that Defendants were obligated to report the accounts had been discharged in bankruptcy, they have stated a cognizable claim for relief under section 1785.25(a).

Whether or not Plaintiffs can prove Defendants furnished inaccurate and/or incomplete information to TransUnion, Equifax and Experian after being in receipt of the bankruptcy discharge is best left for summary judgment or a jury, and is not suited for determination in a motion to dismiss.

### 2. *Failure to Report Chapter 13 Plan*

As to Defendants' alternate argument for dismissal, a majority of judges within the Northern District agree that a furnisher is under no obligation to stop reporting delinquencies upon the filing of a bankruptcy petition or that a failure to comply with industry standards is a sufficient basis to state a claim. In so finding, these courts relied on the fact that a debt subject to a Chapter 13 confirmation plan is only fully extinguished after it is discharged by a bankruptcy court. *See, e.g. Doster v. Experian Info. Solutions, Inc.*, Case No. 16-CV-04629-LHK, 2017 WL 264401, at *3 (N.D. Cal. Jan. 20, 2017) ("it is not misleading or inaccurate to report delinquent debt during the pendency of a [Chapter 13] bankruptcy proceeding"); *Blakeney v. Experian Info. Solutions, Inc.,* Case No. 15-CV-05544-LHK, 2016 WL 4270244, at *5 (N.D. Cal. Aug 15, 2016) (holding that although reporting delinquent payments may be misleading if the debts have been discharged in bankruptcy, "it is not misleading or inaccurate to report delinquent debts that have not been discharged.")*; Mortimer v. JP Morgan Chase Bank, N.A.,* No. C 12-1936 CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug 2, 2012) ("While it might be good policy in light of the goals of bankruptcy protection to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code not the FCRA does so."). *But see, Aulbuch v. Experian Info. Solutions, Inc.*, No. 16-cv-05716-VC, 2017 WL 1807612, at *1 (N.D. Cal. May 4, 2017) (holding that "failure to report changes in the nature of the debt stemming from a Chapter 13 confirmation can indeed violate the [FCRA]," but noting "at least 11 judges in the [northern] district" have ruled otherwise.)

Here, Plaintiffs' pleadings and reliance on *Nissou-Rabban v. Captial One Bank (USA), N.A.,* 2016 WL 4508241 (S.D. Cal. June 6, 2016), saves this portion of the claim. The *Nissou-Rabban* court held that "[a]lthough there is persuasive authority suggesting

that sufficiently pleading an FCRA claim based on failure to follow Metro 2 standards may be difficult, courts that have addressed this argument generally have not held as a matter of law that deviation from standards cannot amount to an 'inaccuracy' for purposes of the FCRA, and by extension the CCRAA." *Nissou-Rabban,* 2016 WL 4508241, at *5. Thus, a furnisher who reports delinquent debts "during the pendency of a bankruptcy should also report the fact that a bankruptcy is pending so that creditors know that those delinquent debts may be discharged in the future." *Doster,* 2017 WL 264401, at *5.

The SAC contains multiple allegations that Defendants received notices of Plaintiffs' filing for Chapter 13 bankruptcy, yet continued reporting Plaintiffs' debt as delinquent without including any indication of the pendent bankruptcy. [*See, e.g.* SAC ¶¶ 25-28, 29, 40, 46, 62, 72, 77, 78, 79.] Further, it alleges that Defendants' reporting deviated from the credit reporting industry Metro 2 standards and that this deviation would mislead potential creditors and prompt those making credit decisions to draw negative inferences. [*See, e.g., id. at* ¶¶ 55, 58, 81, 84.] It is also alleged that by reporting these accounts as past due, Defendants were inaccurately and misleadingly suggesting that Plaintiffs were delinquent on their repayment obligations. (*Id.* at 54, 80.]

Thus, taking Plaintiffs' allegations as true, Defendants "deviation from the industry standard, and its chosen method of reporting, may be 'misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Nissou-Rabban,* 2016 WL 4508241, at *5 (citing *Carvalho,* 629 F.3d at 890, *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 113 (9th Cir. 2009)). Again, this is properly a question for the trier of fact, and not for determination at this time.

### 3. Failure to Allege Damages

Turning to Defendants' damages argument, California Civil Code section 1785.31(a) provides for "actual damages including court costs, loss of wages, attorney's fees and when applicable, pain and suffering" in the case of negligent violation of the CCRAA. CAL. CIV. CODE § 1785.31(a); *Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir. 1995) (holding that emotional distress constitutes actual damages);

*Montgomery,* 2012 WL 5497950, at * 6 (finding allegations of difficulties in accessing credit and necessary products and services was sufficient to state a claim for actual damages).

Notwithstanding Defendants' assertion to the contrary, Plaintiffs have pled damages beyond the alleged negative reporting and its inevitable consequences. Plaintiffs allege that as a result of Defendants' inaccurate reporting they have suffered emotional distress, invasion of privacy, humiliation, embarrassment, anxiety, loss of sleep, defamation of character, pain and suffering, along with the "damages to their credit ratings, damages to their creditworthiness, and were impeded in their ability to obtain credit." (SAC at ¶ 23.) Plaintiffs also allege they "abstained from applying for credit", have spent many hours and "associated costs" reviewing credit reports, disputing the incorrect information furnished by Defendants, and incurred attorneys' fees and other expenses. (*Id.* at ¶¶ 23,24.) Therefore, Plaintiffs have pled the actual damages required by the plain language of the CCRAA.[3]

### 4. Conclusion Regarding CCRAA Claim

In accordance with the foregoing, Defendants' motion to dismiss the CCRAA claim is **DENIED**.

### B. Violation of the Automatic Stay Claim (11 U.S.C. § 362, *et seq.*)

Defendants move for dismissal of the violation of bankruptcy stay claim, asserting the facts alleged do not support a violation. First, Defendants argue the transfer of interests in the debt between themselves did not violate the stay. (Doc. No. 62. at 14-15.) Second, Defendants argue the communications sent to Plaintiffs were mortgage statements and letters that did not demand payment and therefore did not violate the stay. (*Id.* at 15-18.)

---

[3] After this matter was taken under submission, the Ninth Circuit issued in *Jaras v. Equifax,* _ Fed. Appx._, 2019 WL 1373198 (9th Cir. Mar. 25, 2019). To the extent *Jaras* bears on the question of standing (not briefed herein), Plaintiffs' allegations of injuries and damages stemming from moving Defendants, and recited in paragraphs 23-24 of the SAC would appear to meet the requirements of *Spokeo, Inc. v. Robbins,* 136 S.Ct.1540 (2016) and *Jaras.*

In opposition, Plaintiffs contend that their claim has been sufficiently pled to survive the motion to dismiss. (*Id.* at 27-33.)

Upon the filing of a bankruptcy petition, the automatic stay takes effect and is applicable to all entities of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Further, it encompasses "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." *Id.* at § 362(a)(6).

The purpose of the stay is "to avoid a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Fidelity Mortg. Investors,* 550 F.2d 47, 55 (2d. Cir. 1976), *cert. denied,* 426 U.S. 1093, (1977). An additional purpose of the bankruptcy stay is to "prevent harassment of the debtor by sophisticated creditors." *Morgan Guar. Trust Co. of New York. v. Am. Sav. & Loan Ass'n*, 804 F.2d. 1487, 1491 (9th Cir. 1986) (citation omitted). But, "the protections of the automatic stay only enure to the benefit of the debtor, property of the debtor, or property of the estate." *In re Torrez,* 132 B.R. 924, 938 (E.D. Cal. June 12, 1991) (citing *In re Advanced Ribbons & Office Prods., Inc.,* 125 B.R. 259, 263 (9th Cir. BAP 1991)).

The court agrees that the automatic stay only applies to transfers of a debtor's property interests under 11 U.S.C. § 362(a)(3).[4] The debt owed by Plaintiffs was not their property and they possessed no interest in it. Therefore, RCS's transfer of its interest in Plaintiffs' debt to BSI did not violate the automatic stay. *See In re Doble,* Bankruptcy No. 10-11296-MM13, 2011 WL 1465559, at *3 (S.D. Cal. Apr. 14, 2011); *In re Halabi,* 184

---

[4] The Court does not find Defendants' related Rule 8 argument persuasive and declines to dismiss on these grounds.

13

F.3d 1335, 1337 (11th Cir. 1999); *In re Cook,* 457 F.3d 561, 568 (6th Cir. 2006). Defendants' motion to dismiss this portion of the claim is granted.[5]

As to whether the communications sent to Plaintiffs violated the automatic stay, while an automatic stay does not prohibit all types of communication, the types of communications alleged here are precisely the kind the stay provisions were intended to prevent. *Morgan Guar. Trust Co. of New York,* 804 F.2d at 1491.

The SAC alleges that after being notified of the filing of Plaintiffs' bankruptcy petition on August 28, 2012, being afforded the opportunity to file a proof of claim, and following the entry of the automatic stay, RCS sent two loss mitigation letters, eight delinquency letters, and a Notice of Default. (SAC ¶¶ 25-29, 40, 118, 119, 120, 121, 130, 131.) Once the Bankruptcy Plan was filed on September 11, 2012, it is also alleged RCS sent Plaintiffs a monthly billing statement on September 12, 2012 showing past due amounts, unpaid late charges and a breach fee. (*Id.* at ¶ 121.) Further, the SAC alleges that RCS sent a letter stating it was resuming collections and sent at least twenty-three collection notices to Plaintiffs while the automatic stay was in place. (*Id.* at ¶¶123, 132.) After the debt was transferred from RCS to BSI, it is alleged that, between January 2014 and October 2017, knowing of the bankruptcy stay, BSI sent monthly billing statements to Plaintiffs that included unpaid late charges, past due amounts and other fees and included the statement "you must pay this amount to bring your loan current." (*Id.* at ¶ 124, 138.). The SAC also alleges that during the same period BSI sent at least twenty-nine collection notices. (*Id.* at ¶ 139.) Moreover, it alleges that both Defendants acted intentionally and with knowledge of the stay. (*Id.* at ¶¶ 130, 134, 137, 137, 138).

Accepting these factual allegations as true and construing them in the light most favorable to Plaintiffs, the court finds that to the extent Plaintiffs' claims are premised on

---

[5] In so doing, the Court notes that the SAC specifically states: "it is not the bare transfer of the claim which is alleged to be the violation, it is collection letters and the scheme to get full value on the debt by RCS." (SAC at ¶ 135.)

the communications Defendants sent to Plaintiffs, they have stated a cognizable claim for willful violation of 11.U.S.C. § 362(a). *See In re Pace*, 67 F.3d 187, 191 (9th Cir. 1995) (a willful violation requires that the "defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation should be awarded." (quoting *Pinkstaff v. United States,* 974 F.2d 113, 115 (9th Cir. 1992))).

## V. Conclusion

For the reasons explained above, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**. (Doc. No. 62.) The court orders as follows:

1. Defendants' motion to dismiss the California Consumer Credit Reporting Agencies Act claim is **DENIED**; and
2. Defendants' motion to dismiss the Violation of the Automatic Stay Claim is **GRANTED IN PART IN AND DENIED IN PART**.

IT IS SO ORDERED.

Dated: June 4, 2019

Hon. Jeffrey T. Miller
United States District Judge